*458 OPINION.
Korner : The motion of the Commissioner to dismiss the petition for lack of jurisdiction in this Board to hear and determine appeals from deficiencies arising out of the application of the provisions of sections 327 and 328 of the Revenue Act of 1918, is denied in accordance with Appeal of Oesterlein Machine Co., 1 B. T. A. 159, and Appeal of Brownsville and Matamoros Bridge Co., 1 B. T. A. 320.
The Commissioner contends, (1) that the value of the receivables in question was uncertain and undeterminable; (2) that all the assets of the partnership, Whitney, Wabel & Co., were not in fact transferred to the corporation; (3) that the corporation was an agent for the collection of these receivables and acted as such agent for the partners, Whitney, Wabel & Co.; and (4) that the title to the accounts receivable was never vested in the corporation but that such receivables were borrowed capital, and that this is evidenced by the fact that the corporation failed to issue certificates evidencing the second preferred stock which under the agreement was to be issued to the partners of Whitney, Wabel & Co.
The principle involved here is very similar to that involved in the Appeal of Brownsville & Matamoros Bridge Company, supra, The question as to the value of the receivables transferred to the corporation is a question of fact, and we are convinced by the evidence in this appeal that the receivables had the value claimed for them by the taxpayer. We are unable to see how accounts receivable could be valued in any other way than that pursued by the creditors’ committee in this case. The evidence convinces us that this valuation was carefully made and that in the absence of some evidence to the contrary should be taken as the true value.
*459 A reading of the two contracts dated respectively January 1(5, 1917, and June 19, 1917, clearly indicates that it was the intention of the parties to convey outright all of the accounts and bills receivable of Whitney, Wabel & Co. to the corporation, and furthermore that this intent was effectuated. Both of these contracts specifically designate the accounts and bills receivable as items included in the transfer. We are of opinion that these assets were in fact, transferred absolutely to the corporation and that the latter was not an agent of the partnership for the collection of these receivables.
The position of the Commissioner that the accounts receivable, representing the amount of second preferred stock which was to be issued, represent, in fact borrowed money, appears to have been taken for the first time after the filing of this appeal. A careful reading of paragraph (d) of the contract of January 16, 1917, and paragraphs 1, 2, and 8, of the contract of June 19, 1917, indicates that in consideration of the transfer of its assets to the corporation, the partnership immediately received the cancellation of outstanding debts amounting to $69,250 assumed by the corporation, and in addition thereto the partners were to receive second preferred stock equivalent to the amounts realized from the assets over and above such indebtedness. A careful investigation of these accounts at that time showed that they had the value heretofore referred to. If the second preferred stock had been issued immediately to the partners of Whitney, Wabel & Co. in the amount of this paid-in surplus, this contention that these assets represent borrowed capital could not have been raised. However, in our opinion the evidence makes it clear that throughout this transaction the- creditors were in fact saving the Whitney, Wabel Co. from bankruptcy by the organization of this new corporation. And so, while it was definitely understood and agreed that the second preferred stock should be issued to the partners, it was not improper or unusual for the issuance of the certificates to be deferred until the company had the actual working benefit of these assets. While the certificates were not actually issued, the amounts of such second preferred stock were credited on the books of the corporation in accordance with the agreement and the partners received regularly the dividends thereon. In our opinion the receivables represented by the second preferred stock are not borrowed money. Section 325 of the Revenue Act of 1918 defines borrowed capital as money or other property borrowed whether represented by bonds, notes upon accounts, or otherwise. Article 812 of Regulations 45 construing the above section of the act is as follows:
Akt. 812. Borrowed capital: securities. Any interest in a corporation represented by bonds, debentures, or other securities, by whatever name called, including so-called preferred stock, if with respect to the payment of either interest or principal it ranks with or prior to the interest of the general creditors, is borrowed capital and can not be included in computing invested capital. Any such preferred stock may, however, be so included if it is deferred with respect to the payment of both interest and principal to the interest of the general creditors.
We do not entertain any doubt but that in case of insolvency or bankruptcy of the corporation the general creditors would have priority over any claim of the partners as to the assets here in question.
*460 We are convinced by the entire record in this appeal that the receivables in question had the value claimed for them by the taxpayer and that they were transferred and vested absolutely in the corporation as of March 1,1917, and that their value should properly be treated as paid-in surplus of the corporation. Owing to certain adjustments, above referred to, their value in 1918 was adjusted downward to $72,770.84, and therefore the paid-in surplus for the corporation for the latter years should be in the last-named amount. The invested capital for the corporation for the year 1918 should be computed accordingly.